```
         IN THE UNITED STATES DISTRICT COURT FOR THE
               SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

MICHAEL DARNELL OLIVER         :
(AIS #207467)
                               :
     Plaintiff,
                               :
vs.                                 CIVIL ACTION 11-00509-WS-M
                               :
TONY PATTERSON, et al.,
                               :
     Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. (Doc. 7). This action has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After consideration of the pleadings, and for the reasons set forth below, it is recommended that this action be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

## I. STANDARD OF REVIEW

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing his complaint under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis either in law or in fact." Neitzke v.

1

Williams, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, or the claim seeks to enforce a right that clearly does not exist.[1] Id. at 327.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (second brackets in original). The court will treat these factual allegations as true. Iqbal, 129 S. Ct. at 1949. However, the court will not accept as true

---

[1] The frivolity and the failure-to-state-a-claim analysis contained in Neitzke was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996. See Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001). However, dismissal is now mandatory under § 1915(e)(2)(B). Id.

2

"[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts," Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]"  Iqbal, 129 S. Ct. at 1949.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  Jones v. Bock, 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a less stringent standard than those of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a court, does not have "license ... to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action."  GJR Invs. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by* Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868.  Further, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

## II. DISCUSSION

For purposes of this analysis, the Court assumes the allegations in Plaintiff's complaint as true.  Plaintiff is currently

3

incarcerated at Holman Correctional Facility ("Holman"), having been convicted of second degree assault and sentenced to twenty years in prison. (Doc. 7 at 6). Plaintiff filed his original complaint on August 3, 2011, in the United States District Court for the Middle District of Alabama. (Doc. 1). On August 30, 2011, Plaintiff's action was transferred to this Court. (Doc. 5). On September 1, 2011, Plaintiff was ordered to file his complaint on this Court's form, which Plaintiff did on September 21, 2011. (Doc. 7).

In his complaint, Plaintiff challenges two disciplinary proceedings that resulted in his confinement to disciplinary segregation for thirty and forty-five days, respectively, and the loss of "privileges"[2] for forty-five days. Plaintiff suffered no loss of good-time credits.

Plaintiff claims that Defendants, Warden Tony Patterson, Assistant Warden DeAngelo Burrell, Sergeant Christopher Earl, Sergeant Johnny Johnson, and Sergeant Theresa Moore, violated his constitutional rights by placing him in disciplinary segregation and taking away his "privileges" without providing him due process. (Doc. 7 at 4, 11). According to Plaintiff, the challenged disciplinary proceedings arose out of an incident that occurred on

---

2 Although Plaintiff does not specify which "privileges" he lost, the Court assumes that he is referring to the loss of privileges typically associated with disciplinary action, such as telephone, store, and visitation. (Doc. 7 at 11).

4

July 10, 2011, when, Plaintiff alleges, he was assaulted by Alabama Department of Corrections ("ADOC") officials.  (Id.).  As a result of that incident, Plaintiff was charged with violating rule #44, making threats against an ADOC official, and rule #29, assault on an ADOC official.  (Id. at 4, 10).

It appears from Plaintiff's complaint that he received notice of the first disciplinary action on July 10, 2011.  (Id. at 4).  He attended the hearing on July 19, 2011, and he presented one witness, Ricky Gilland.  (Id.).  At that hearing, the hearing officer, Defendant Earl, found him guilty of violating rule #44, threatening an ADOC official, and recommended that he receive thirty days in disciplinary segregation.  (Id.).  Defendant Burrell approved the hearing officer's recommendation.  (Id. at 10).

At the second disciplinary hearing held on July 28, 2011, Defendant Johnson testified, and the hearing officer, Defendant Theresa Moore, found Plaintiff guilty of violating rule #29, assault on an ADOC official, and recommended that he receive forty-five days in disciplinary segregation, forty-five days loss of privileges, and referral to the "Federal Bureau of Prisons (I and I)."  (Id. at 10-11).  Defendant Burrell approved the hearing officer's recommendation.  (Id. at 10).

Plaintiff alleges that the disciplinary hearings violated his rights to due process in the following respects: they were untimely;

5

Defendants Patterson and Burrell never responded to his requests to meet with him before approving the findings of the hearing officers; Defendants failed to give him notice or an opportunity to attend and present witnesses in the second hearing; Defendant Moore, the hearing officer in his second hearing, "forged" the disciplinary document charging him with the second rule violation; and Defendant Johnson answered questions at the second disciplinary hearing without Plaintiff being present.  (Id. at 4, 10-11).

In his request for relief, Plaintiff seeks monetary damages against Defendants, as well as injunctive relief, including, free commissary for as long as he is at Holman, a restraining order requiring Defendants to remain 100 yards from him at all times, an order that Defendants not be allowed to approve loss of privileges or disciplinary segregation for him, an order that Defendants not be allowed to order anyone to take money from his prison account, an order requiring that Defendants be suspended for ninety days without pay, an order transferring him to another correctional facility, an order requiring that Defendants institute a grievance procedure, and an order requiring that Defendants pay all costs and fees associated with this litigation.  (Doc. 7 at 9).

For the reasons set forth below, Plaintiff fails to state a claim upon which relief can be granted.

    1.   <u>Confinement to Disciplinary Segregation</u>.

The Court construes Plaintiff's allegations as asserting the deprivation of a liberty interest. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). See also U.S. CONST. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]").

Since the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), an inmate must demonstrate that he suffered a "grievous loss" as a result of a disciplinary proceeding in order for a liberty interest to be found to which due process attaches. In Sandin, an inmate challenged his thirty-day segregation sentence based on a due process violation, and the Supreme Court ruled that there was neither a right inherent in the Due Process Clause not to be placed in disciplinary segregation nor a liberty interest created by the State to be free from disciplinary segregation. Id. at 487. The court concluded that, because no liberty interest was implicated by placement in disciplinary segregation, no due process was required. Id.

In reaching this conclusion, the Sandin court announced that it was returning to the due process principles of Wolff v. McDonnell, 418 U.S. 539, 557 (1974), and Meachum v. Fano, 427 U.S. 215, 225

(1976), which required an inmate to suffer a "grievous loss" before a liberty interest could be found.[3]  Sandin, 515 U.S. at 483.  The Sandin court ruled that, in the future, liberty interests would be "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id., 515 U.S. at 484 (citations omitted).  The court concluded that, because the inmate's confinement to disciplinary segregation was not a dramatic departure from the ordinary conditions of incarceration, because it was the type of discipline a prisoner should expect as an incident to his criminal sentence, and because it "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," there was no protected liberty interest that would entitle him to due process protection.  Sandin, 515 U.S. at 485-87.

    Applying these principles to the present action, Plaintiff's confinement to disciplinary segregation for thirty days as a result of his first disciplinary violation and forty-five days as a result

---

[3] In Wolff, 418 U.S. at 557, the court found that there was a state-created liberty interest in the loss of good-time credits, while, in Meachum, 427 U.S. at 226-29, the court found no such state-created liberty interest in intrastate prison transfer.

of the second violation did not deprive him of a liberty interest inherent in the Constitution.  Moreover, Plaintiff's allegations do not include facts upon which a State-created liberty interest could be found.  Indeed, Plaintiff has not alleged any facts which would show that his confinement in disciplinary segregation was a dramatic departure from the ordinary conditions of incarceration or that it presented an "atypical, significant deprivation" in which the State might conceivably have created a liberty interest.  Sandin, 515 U.S. at 486.

 Accordingly, Plaintiff has failed to state a claim upon which can be granted in regard to his short-term confinement to disciplinary segregation.  See Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (two-month confinement in administrative segregation was not a deprivation of constitutionally protected liberty interest); Taylor v. White, 2012 WL 404588, *2-3 (S.D. Ala. 2012) ("plaintiff's confinement to disciplinary segregation for thirty days did not deprive plaintiff of a liberty interest . . . to which due process could attach."); Dueberry v. Meyers, 2011 WL 4591236, *4 (S.D. Ala. 2011) ("Plaintiff's confinement in disciplinary segregation for forty-five days did not deprive him of a liberty interest inherent in the Constitution, nor did it give rise to a state-created liberty interest."); Harrison v. Myers, 2011 WL 3204372, *4 (S.D. Ala. 2011) ("plaintiff's confinement to

9

disciplinary segregation for ten, twenty-one, and forty-five days did not deprive plaintiff of a liberty interest . . . to which due process could attach."); cf. Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir. 1996) (twelve months of solitary confinement did represent "substantially more 'atypical and significant hardship[]. . . in relation to the ordinary incidents of prison life,'" and, thus, prisoner was entitled to due process).

    2.   Loss of Telephone, Store, and Visitation Privileges.

The Court now turns to the portion of Plaintiff's disciplinary sentence mandating the loss of "privileges" for forty-five days.  As discussed above, Plaintiff does not identify which privileges he was denied as a result of his second disciplinary sentence.  Therefore, for purposes of this analysis, the Court assumes that Plaintiff lost telephone, store, and visitation privileges, as is typical in prison disciplinary proceedings.  Assuming that to be the case, Plaintiff's allegations fail to state a claim upon which relief can be granted because they fail to present a protected liberty interest to which due process attaches.[4]

---

[4] The Court notes that, even if analyzed as a property interest, Plaintiff's allegations related to his loss of privileges fail to state a claim upon which relief can be granted.  See, e.g., Antoine v. Uchtman, 275 Fed. Appx. 539, 541 (7th Cir. 2008) (unpublished) ("loss of commissary privileges . . . affect[s] neither 'liberty' nor 'property'" as those terms are defined by Sandin.); Gross v. Warden, 2008 WL 1815307, *2 (unpublished)(M.D. Pa. 2008)("Prisoners do not have a constitutionally protected liberty or property interest

The Constitution does not grant an inmate a right in visitation, store, or telephone privileges.  See Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (finding that an inmate does not have a protected interest in visitation arising from the Due Process Clause); Taylor, 2012 WL 404588, *3 (S.D. Ala. 2012) ("the Constitution does not grant an inmate a right in visitation, store, and telephone privileges."); see also Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no liberty or property interest under the Due Process Clause when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges).

Moreover, there is no State-created liberty interest in such privileges.  "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights."  Sandin, 515 U.S. at 485.  To that end, an inmate's ability to shop, to use the telephone, and to visit is heavily restricted while in prison, as are most aspects of an inmate's life.  The further restriction of these privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation.  Furthermore, it is not "atypical," nor is it a "significant hardship" under the Sandin analysis.  It is the type of discipline that should be expected by a prisoner as an incident to his criminal sentence.  See id. at 484-86.  Therefore, there is no State-created liberty
_____

in a certain amount of monthly telephone minutes.").

interest in telephone, store, or visitation privileges to which due process could attach.[5]  See Solliday v. Federal Officers, 413 Fed. Appx. 206, 210 (11th Cir. 2011) (unpublished)[6] (prison decisions related to visitation do not give rise to a protected liberty interest); Dueberry, 2011 WL 4591236, *4 (S.D. Ala. 2011) (plaintiff's disciplinary sentence mandating the loss of telephone, store, and visitation privileges for forty-five days did not present a liberty interest to which due process attached); Harrison, 2011 WL 3204372, *4-5 (S.D. Ala. 2011) (plaintiff's disciplinary sentences mandating the loss of telephone and store privileges for twenty-one days and the loss of visitation privileges for six months did not present a liberty interest to which due process attached); Walker v. Loman, 2006 WL 3327663, at *1, *3 (M.D. Ala. 2006) (unpublished) (ninety-day loss of store, telephone, and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest).  Accordingly, Plaintiff's allegations related to his loss of privileges fail to state a due process claim upon which relief

---

[5] Plaintiff also alleges in his complaint that part of his disciplinary sentence included referral to the "Federal Bureau of Prisons I and I."  (Doc. 7 at 11).  For the same reasons set forth herein with respect to Plaintiff's confinement in disciplinary segregation and his loss of privileges, the Court finds that Plaintiff has no liberty interest in avoiding such a referral.

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2.

could be granted.

       3.   <u>Due Process Violations</u>.

As discussed above, Plaintiff claims that Defendants violated his rights to due process in connection with his disciplinary proceedings in various respects, including deficiencies in matters such as timeliness, notice, the right to be present at the hearings, and the right to present witnesses.  (<u>Id.</u> at 4, 10-11).  However, having found herein that Plaintiff's allegations do not present a liberty interest to which due process would attach, Plaintiff was not entitled to due process with respect to his disciplinary proceedings.  Therefore, his allegations of due process violations against these Defendants fail to state a claim upon which relief can be granted.  <u>See</u> <u>Lee v. Myers</u>, 2011 WL 6415496, *5 (S.D. Ala. 2011) ("the Court is prohibited from considering whether there was a due process violation in the absence of a protected liberty interest."). <u>See also</u> <u>McKeithan v. Jones</u>, 212 Fed. Appx. 129, 130 (3d Cir. 2007) (unpublished) (court held that it was prohibited from considering plaintiff's challenges to the factual conclusions by the hearing officer because "a protected interest as defined by <u>Sandin</u>" was not violated).

## CONCLUSION

Based upon the foregoing, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[7] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

7 Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable Where Proceedings Tape Recorded).** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 8th day of March, 2012.

                                      s/BERT W. MILLING, JR.
                                      UNITED STATES MAGISTRATE JUDGE